IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY BLACKBURN, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLIED POWER SERVICES, LLC,<br><br>Defendant. | No. 18-CV-00347<br><br>Honorable Judge Jorge L. Alonso<br><br>Magistrate Judge Jeffrey Cole |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR STAGE-ONE CONDITIONAL CERTIFICATION AND NOTICE TO PUTATIVE CLASS MEMBERS**

Jody A. Boquist
Darren M. Mungerson
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, IL  60654
312.372.5520

Dated:  July 20, 2018

I.      INTRODUCTION

Plaintiff Jeffrey Blackburn, Jr., who briefly worked for Allied Power Services, LLC ("Allied") as a non-exempt Electrician and as an exempt Electrical Superintendent in Illinois, alleges that he was a non-exempt hourly employee who was paid "straight time for overtime" in violation of the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law. Through his Motion for Stage-One Conditional Certification and Notice to Putative Class Members (the "Motion"), Blackburn asks this Court to conditionally certify an extraordinarily broad nationwide collective of employees who were paid "straight time for overtime," including individuals who were never employed by Allied. The Court must deny the Motion because Plaintiff lacks standing, as he is not a member of the putative collective he seeks to represent, because he was never paid so-called "straight time for overtime" by Allied.

In addition, the Court should deny Plaintiff's Motion because the members of the proposed collective are not "similarly situated" to one another, even under the relatively lenient standard applied for conditional certification purposes. Although Allied's exempt, salaried employees are eligible for additional compensation paid in the form of "straight-time hours," this premium pay is lawful under the FLSA and, thus, cannot serve as a common policy or plan to underpin Plaintiff's putative collective (even if Plaintiff had standing to assert such a claim). Plaintiff's claim, then, is essentially a challenge to the exempt classification of **more than 100 different exempt positions** in **at least 18** different locations nationwide, each with varying duties, responsibilities, and levels of supervisory authority. (*See* Declaration of Christy Fairchild ("Fairchild Decl."), ¶4.) Plaintiff fails to make even a modest factual showing that a pervasive, unlawful policy of misclassification binds together Plaintiff and the diverse members of the putative collective. To the contrary, these positions are vastly different, such that individualized inquiries will dominate the Court's consideration of whether employees occupying them were

properly classified as exempt based on their job duties and their compensation.

## II. STATEMENT OF FACTS

### A. Allied Has Implemented Lawful Compensation Policies.

Allied provides a broad array of services to owners and operators of power plants, including maintenance and modification services at nuclear plant sites in Illinois, Maryland, New York, New Jersey and Pennsylvania. (Fairchild Decl., ¶2.) Plaintiff and certain members of the putative collective were employed by Allied across 18 nuclear power plants in these states. (*See id.*, ¶7.)

Allied's Employee Handbook[1] provides that exempt employees "are paid on a salaried basis and are not eligible to receive overtime pay," but provides that such employees "may be paid an hourly rate for work in excess of 40 hours per week." (Ex. A, at 2.)[2] This is expressly permitted by applicable FLSA regulations. *See* 29 C.F.R. § 541.604(a) (exempt employees may receive additional compensation above salary without destroying exempt status, even where additional compensation is paid on "a *straight-time hourly amount*, time and one-half or any other basis") (emphasis added). The Handbook notes that "[t]his special pay is for certain job positions and must be pre-approved by the employee's supervisor." (Ex. A, at 2.) (*See also id.*, at 4 (exempt employees are eligible for premium pay, referred to as "overtime, at a straight time rate, if pre-approved by the supervisor and on a job and site-specific basis").)

The Handbook also sets forth Allied's commitment to compliance with the FLSA's salary basis requirements for exempt employees: "The Company does not make improper deductions from the salaries of exempt employees and complies with the salary basis requirements of the

---

[1] Plaintiff himself acknowledged that he received and understood this handbook on September 18, 2017. (*See* Ex. B.)
[2] The page numbers identified in citations to Exhibits are those associated with the Bates numbering. For example, Page ALLIED000002 in Exhibit A is referred to as "Ex. A, at 2" for ease of reading.

Fair Labor Standards Act (FLSA)." (*Id.*) It further articulates that "[p]ermitted deductions" it may make from an exempt employee's salary include "[a]bsence from work for one or more full days for personal reasons other than sickness or disability" and "[a]bsence from work for one or more full days due to sickness or disability if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for salary lost due to illness." (*Id.*) Such deductions from the salary compensation of exempt employees are permitted pursuant to 29 C.F.R. § 541.602(b). The same policy directs exempt employees to report any suspected improper deductions to the payroll department, and where "an improper deduction has been made, the company will reimburse the employee for the improper deduction." (Ex. A, at 5.)

Additionally, Allied's supervisors are expected to review timesheets of their direct reports and make adjustments as necessary, with the employee's knowledge and consent. (Fairchild Decl., ¶6.) For example, if an exempt employee reports only a partial day for purposes of reporting billable hours, the supervisor and employee are required to ensure that a full day's work is to be paid to that employee. (*Id.*) Nonetheless, supervisors in different departments and at different locations use varying practices regarding how exempt employees account for their time on company timesheets and how they ensure exempt employees are not improperly docked for a partial day's work. (*Id.*)

Allied's compensation plan is substantially similar to a plan explicitly approved by the U.S. Department of Labor ("DOL") in a July 9, 2003 Opinion Letter. U.S. DOL, Wage & Hour Div., Opinion Letter, 2003 WL 23374601 (July 9, 2003). In that Opinion Letter, the company owned power plants and related facilities involving utilities that operated 365 days per year and 24 hours per day. *Id.* at *1. The company paid its exempt employees an annual salary that exceeded the FLSA's minimum salary requirement, as well as additional compensation, referred

to as "overtime," at a straight-time rate for hours worked in excess of 40 per week. *Id.* The company required its exempt employees to record and report their working time, using the same time-entry codes as non-exempt employees and with the same ability to report vacation time, sick time, and personal leave, among other things. *Id.* The company reported that, in some cases, exempt employees may have been paid initially only for the amount of time entered on employee time-sheets due to error, omission or otherwise, but that the company had a process for correcting such underpayment. *Id.* Despite such errors or omissions, the DOL ultimately concluded that this compensation system satisfied the FLSA's salary basis requirements because the company "indicate[d] that the exempt employees are guaranteed that they will be paid at least 1/26th of their annual salary every other week." *Id.* at *2.

    **B.**  **Allied Paid Plaintiff In Accordance With Its Lawful Compensation Policies.**

Despite his assertions to the contrary, Plaintiff was not an hourly employee during the whole period (of slightly more than one month) that he was employed by Allied. He first was employed by Allied as an Electrician, which is a non-exempt role, at LaSalle County Nuclear Generating Station from on or about August 28, 2017 until September 14, 2017. (Fairchild Decl., ¶7.) He never worked more than 40 hours in any workweek during that period. (*See* Ex. N; *see also* Fairchild Decl. ¶8.) Plaintiff was laid off due to lack of work. (Fairchild Decl., ¶7.) Only days later, he was rehired as an Electrical Superintendent,[3] which is an exempt position. (*Id.*) From September 18, 2017 until his termination on October 5, 2017, Plaintiff worked in this position at Braidwood Generating Station. (*Id.*)

Allied provided Plaintiff an offer letter informing him that the Electrical Superintendent position was a "full-time exempt position" and that he would be paid a "Base Salary of $55.85

---

[3] Plaintiff's job description for this exempt position is attached as Ex. C.

per hour…, which is equivalent to $116,168.00 per year on an annualized basis." (Ex. M, at 26.) Most notably, Plaintiff's pay stubs for this period indicate that he never was paid less than the full weekly portion ($2,234.00) of his biweekly salary of $4,468.00 (other than the proportionate salary payment for time actually worked in his last week of employment),[4] and that he never received "straight-time" premium pay. (*See* Ex. N; *see also* Fairchild Decl., ¶8.) Allied complied with the salary basis requirements of the FLSA and did not deduct for Plaintiff's partial day absences. For example, in his first week of employment as an Electrical Superintendent, Plaintiff reported working only 33.5 hours on his Supervision Weekly Time Sheet, with a partial day of work (1.5 hours) on Wednesday, September 20, 2017. (*See* Ex. N, at 46.) Yet, Plaintiff was paid the full weekly portion of his biweekly salary for this workweek. (*See id*., at 33.)

      **C.**      **Several Of The Opt-In Plaintiffs Were Not Employed By Allied.**

Many of the individuals who have filed consents to join this lawsuit were never employed by Allied but, instead, were employed by Allied Power Resources, LLC ("APR"). (Fairchild Decl., ¶14.) APR is a different entity that provides difference services – namely, staff augmentation services – to its customers and, most importantly, utilizes a different employee handbook with different policies. (*Id*. ¶15.)

Opt-in plaintiff and declarant Tony Manley, whom Plaintiff utilizes as a centerpiece of his Motion, was not employed by Allied or subject to its policies or practices. (*Id*. ¶14.) This should have been evident to Plaintiff from the entity name on Manley's pay stubs, (*see* Dkt. 45-1, at 3), as well as his offer letter. (*See* Dkt. 45-1, at 10.) Opt-in plaintiffs and declarants John Logan and Timothy Redick also were employed by APR and not Allied. (Fairchild Decl., ¶14.) At least **39** of the current opt-in plaintiffs were not employed by Allied. (*Id*.)

---

[4] 29 C.F.R. § 541.602 permits an employer to "pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment."

### D. Like Plaintiff, The Opt-In Plaintiffs Who Were Employed By Allied Were Classified As Exempt And Paid On A Salary Basis.

Allied's Handbook explains that "[e]mployees classified as exempt … will be notified of this classification at the time of hire or change in position." (Ex. A, at 4.) Like Plaintiff, many of the opt-in plaintiffs who were employed by Allied were informed in their offer letter that they were classified as exempt and would be paid on a salary basis.[5] In addition, Allied's recruiters are expected to discuss with any candidate for an exempt position the exempt status of the position, the position's guaranteed salary, and the position's eligibility for hourly premium pay for hours in excess of forty in a workweek. (Fairchild Decl., ¶9.) Finally, the exempt status of many, if not all, opt-in plaintiffs was designated on numerous Internal Employee Action forms.[6]

The opt-in plaintiffs employed by Allied were paid their guaranteed salary without improper deductions. For example, on her timesheet for the workweek ending on April 8, 2018, Lynn Clark reported working only 28.5 hours, including two partial days of work on April 2, 2018 (6.5 hours) and on April 4, 2018 (6 hours), and sick time for April 3, 2018. (*See* Ex. II, at 86.) However, Allied paid Clark her full biweekly salary of $4,041.30. (*See id.*, at 87.) This is not the only example of Clark receiving her full biweekly salary despite working partial days in the same pay period. (*See id*.)

Likewise, on Richard Berkeley's Supervision Weekly Time Sheet for the workweek

---

[5] *See, e.g.*, Ex. O (B. James' offer of employment "in the exempt position of Safety Coordinator"); Ex. P (B. Mitchell's offer of employment in the "exempt position of Mechanical Superintendent"); *see also* sampling of opt-in plaintiffs' offers of employment indicating exempt classification of positions at Exs. Q through X. In addition, because several of these individuals made in excess of $100,000 annually, the "highly compensated" individual test for exemption under the FLSA would be applicable to those people, making further distinctions among the purported collective.

[6] *See, e.g.*, opt-in plaintiffs' Internal Employee Action forms indicating their exempt status at Exs. Y through HH.

ending on September 3, 2017, he reported working only 36 hours with a partial day of work (4 hours) on September 1, 2017. (*See* Ex. JJ, at 91.) Nonetheless, Allied paid his full weekly salary of $2,600.00. (*See id*., at 92.) Robert Dammann also reported, on his Supervision Weekly Time Sheet for the workweek ending on January 14, 2018, that he worked only 39 hours, with a partial day of work (6.5 hours) on January 10, 2018. (*See* Ex. KK, at 93.) Like Clark and Berkley, though, he was again paid his full weekly salary of $3,362.85. (*See id*., at 94.)

      E.      **The Opt-In Plaintiffs Who Allied Employed Held Different Positions With Different Duties And Different Bases For Their Classifications as Exempt.**

Although Plaintiff's claim, at its core, is that Allied misclassified him and other employees as exempt, he makes no mention of his duties or the duties of any employees he seeks to represent. As is illustrated by a sampling of job descriptions from the more than 100 positions at issue, job duties and responsibilities vary widely. (*See* Exs. C through L.) A Cost Engineer's job duties, for example, are vastly different from the job duties of a Mechanical Superintendent (otherwise referred to as Mechanical Supervisor). (*Compare* Ex. E, *with* Ex. G.) Yet individuals in both positions – and many others – have opted into this lawsuit.

**III.    ARGUMENT**

      A.      **Plaintiff Bears The Burden Of Presenting Sufficient Evidence To Support Conditional Certification.**

Once a plaintiff files an FLSA claim, district courts have "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Thus, "district courts have discretion, **in appropriate cases**, to implement 29 U.S.C. § 216(b)" by certifying FLSA lawsuits as collective actions and allowing notice to the putative class. *Id.* at 170 (emphasis added). The Seventh Circuit has recognized the "tremendous financial burden to the employer" of class-wide discovery. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir.

1982). Improper certification wastes time and resources of both courts and litigants. *See Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008). In the absence of evidence that a potential collective is similarly situated, "allowing for opt-in notification and discovery throws a huge burden upon defendants without any indication that the goals of the collective action mechanism are likely to be met." *Powers v. Centennial Commc'ns Corp.*, 679 F. Supp. 2d 918, 922 (N.D. Ind. 2009).

Courts in this District apply a two-part test to determine whether an FLSA claim should proceed on a collective basis. *See Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). Under the first step, the named plaintiff must establish that others are similarly situated "by making a modest factual showing" demonstrating they "together were victims of a common policy or plan that violated the law." *Id.* If the named plaintiff satisfies this requirement, the Court may conditionally certify the matter and authorize notice to the putative class, allowing them the opportunity to "opt in." *Id.* Under the second step, which occurs after the close of discovery, the court reevaluates its certification decision to assess whether class members are sufficiently similarly situated to allow the matter to remain a collective action. *Id.*

The first step is an "important and functional step in the certification process." *Adair*, 2008 WL 4224360, at *4. "Though lenient, the 'modest factual showing' standard is not a mere formality." *Nogueda v. Granite Masters, Inc.*, 2010 WL 1521296, at *2 (N.D. Ind. Apr. 14, 2010); *see also Vazquez v. Ferrara Candy Co.*, 2016 WL 4417071 (N.D. Ill. Aug. 19, 2016) (denying motion for conditional certification). Nor is it "a matter of rubber-stamping." *Blakes v. Ill. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 43147, at *6 (N.D. Ill. Apr. 21, 2011). Rather, the named plaintiff must "demonstrate a factual nexus that binds potential members of a collective action together." *Gromek v. Big Lots, Inc.*, 2010 WL 5313792, at *2 (N.D. Ill. Dec. 17, 2010)

(internal quotation marks and citation omitted). Furthermore, the plaintiff must "successfully engage" the defendant's evidence to the contrary, which courts must also consider when determining whether to conditionally certify an action. *See Blakes*, 2011 U.S. Dist. LEXIS 43147, at *6. Where plaintiffs object to requests for limited discovery on the issues pertinent to their motions for conditional certification, "they have assumed the risk that their declarations and allegations will be adequate to push them past the conditional certification stage." *Id.*

### B. Plaintiff Lacks Standing To Bring An FLSA Claim.

As a threshold matter, Plaintiff lacks standing to bring an FLSA claim on behalf of the purported collective he seeks to represent. A named plaintiff in an FLSA collective action cannot, on behalf of a collective, pursue claims he himself lacks standing to assert due to lack of injury. *See Forney v. TTX Co.*, 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006) (rejecting the plaintiff's argument that "[b]ecause she and other exempt employees were subject to the same violation of FLSA policy, … they are similarly situated" and concluding that, because "in her first amended complaint, she did not allege any injury resulting from this policy," the plaintiff had "no standing to sue"); *In re FedEx Ground Package Sys., Inc. v. Empl. Practices Litig.*, 662 F. Supp. 2d 1069, 1082 (N.D. Ind. July 27, 2009) (original named plaintiffs "lack standing to pursue FLSA overtime claims on a representative basis because they don't meet the proposed class definition"). Plaintiff never received "straight time for overtime," which is the purportedly unlawful policy upon which he rests his claim and defines his collective. (See Fairchild Decl., ¶ 8.) As such, Plaintiff is not a suitable representative of the putative collective he seeks to represent, and this alone is sufficient grounds for denying his motion for conditional certification. *See Long v. BDP Int'l, Inc.*, 2013 WL 11327088, at *3 (S.D. Tex. Mar. 14, 2013) (vacating conditional certification of team leader class because there was no suitable representative).

### C. Plaintiff Fails To Demonstrate That He And The Putative Collective Were Subject To A Common Unlawful Policy, Practice, Or Procedure.

Plaintiff asks the Court to conditionally certify an FLSA collective action consisting of "[a]ll individuals who **worked for Allied**" during the last three years[7] and "were paid **the same hourly rate for all hours worked**…." There are several issues with the proposed class. First, Allied did not employ all individuals Plaintiff seeks to include in the putative collective. Second, Allied did not and does not pay its non-exempt, hourly employees the same hourly rate for all hours worked. Rather, Allied pays certain exempt employees an hourly premium for hours in excess of forty in a workweek, in addition to their guaranteed salary. Third, Plaintiff does not allege that he and the members of the putative collective were the victims of a common policy or plan due to their classification as exempt. As such, the Motion should be denied.

#### 1. Allied did not employ all individuals in the putative collective.

Although Plaintiff's definition of the collective purports to include only those individuals who "worked for Allied," the presence of numerous opt-in plaintiffs who were never employed by Allied indicates that he seeks to include individuals other than those employed by the named defendant. Conditional certification under these circumstances is inappropriate. *See, e.g.*, *Pfaahler v. Consultants for Architects*, 2000 WL 198888, at \*2 (N.D. Ill. Feb. 8, 2000) (denying conditional certification where an individual determination on the nature of each opt-in plaintiff's employment relationship was required).

#### 2. Allied never paid "straight time for overtime" to non-exempt employees.

---

[7] Plaintiff does not mention willfulness in his motion for conditional certification, and the conclusory allegations in his Complaint (*see* Dkt. 1, ¶¶ 49, 51, 67(b)) are insufficient to support a putative collective extending back three years, even if the court were to grant conditional certification. *See Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1144 (7th Cir. 2001) (affirming two-year limitations period where plaintiff did not provide evidence of willfulness); *Butler v. East Lake Mgmt. Grp.*, 2013 WL 2112032, at \*3 (N.D. Ill. May 15, 2013) (FLSA claim barred by two-year statute of limitations where plaintiffs alleged that violation was willful but failed to allege facts to support of the conclusory statement).

Plaintiff contends that "Allied's hourly employees who it paid straight time for overtime share a common employment experience, *regardless of job duties*, and are similarly situated." (Dkt. 45-1, at 4.) This is false. First, as explained above, Allied has a lawful policy of paying non-exempt employees overtime at time and one-half their regular rate of pay for all hours worked over 40 in a workweek. Only exempt employees are eligible to receive "overtime, at a straight time rate," and were only permitted to receive such compensation "if pre-approved by the supervisor and on a job and site-specific basis." As such, Plaintiff's claim does not bear on Allied's policies or practices with respect to its non-exempt, hourly employees but only its exempt, salaried employees. Plaintiff appears to argue that the classification of Plaintiff and others as exempt was improper.

However, this argument will require the Court to consider whether members of the putative collective were properly classified as exempt while employed in more than 100 different exempt positions in at least 18 locations nationwide, and under the supervision of a litany of different supervisors within their respective areas of responsibility and locations. (Fairchild Decl., ¶4.) While Plaintiff would like the court to disregard these differences for purposes of his motion for conditional certification, they go to the very core of whether he and the members of the putative collective are similarly situated. *See Blake v. Hewlett-Packard Co.*, 2013 WL 3753965, at *8 (S.D. Tex. July 11, 2013) (denying the plaintiffs' motion for conditional certification and remarking that, in a misclassification case, "for the purpose of certifying a collective action, a **critical question** is whether there is sufficient similarity of job duties to allow collective determination of exemption status") (emphasis added).

In *Ruiz v. Serco, Inc.*, 2011 WL 7138732 (W.D. Wis. Aug. 5, 2011), the court denied the plaintiffs' motion for conditional certification arising from claims of misclassification, noting

that "[t]he proposed class includes approximately 1,000 employees working in 15 different positions under different supervisors and in different locations around the country" and concluding that "the evidence does not demonstrate that the primary duties of the potential class members are sufficiently similar or that they exercised similar levels of discretion and responsibility while carrying out their primary duties." It further remarked that, because of the number of positions that fell within the putative class, "it would be difficult to generate common answers in light of the individualized inquiries arising from the wide variations in duties, experience, responsibility, discretion and supervisors on the part of the potential class members." *Id.* at \*6; *see also Arceneaux v. Fitness Connection Option Holdings*, *LLC*, 2017 WL 5749608, at \*8 (S.D. Tex. Nov. 28, 2017); *Romero v. H.B. Auto. Grp., Inc.*, 2012 WL 1514810, at \*11 (S.D.N.Y. May 1, 2012); *Wood v. TriVita, Inc.*, 2009 WL 2046048 at \*4 (D. Ariz. Jan. 22, 2009).

Plaintiff argues that differences in the job duties and activities of the positions at issue here should not be considered "until step two of the certification analysis." (Dkt. 45-1, at 6.)[8] However, Plaintiff does not even allege - nor provide a single basis for the Court to conclude – that he is sufficiently similarly situated in terms of job duties to individuals in the more than 100 different exempt positions he seeks to include in the putative collective. Plaintiff also argues that "[u]niformity of pay practices justifies conditional certification in cases involving 'straight time for overtime' in spite of the significant differences between members of the putative collective." (*Id*. at 11.) In support, Plaintiff cites to and discusses *Wellman v. Grand Isle Shipyard, Inc.* and

---

[8] Plaintiff's citations in support of his argument that differences in job title, function, or pay do not prevent a finding that individuals are similarly situated are easily distinguishable. In *Jirak v. Abbott Labs, Inc.*, there was a single position at issue – pharmaceutical representatives – and the court found that "despite some variation in their job duties, there is evidence that pharmaceutical representatives have the same essential responsibility: calling on physicians and promoting Defendant's pharmaceutical products." 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008). In addition, neither *Garza v. Chicago Transit Auth.*, 2001 WL 503036 (N.D. Ill. May 8, 2001), nor *Lamarr v. Ill. Bell Tel. Co.*, involved claims of exempt misclassification and, again, Lamarr only concerned a single position (call center representatives).

*Kilmon v. Saulsbury Indus., Inc.* Both of these cases, however, only serve to underscore Allied's argument that the proposed collective, being made entirely of exempt employees in a variety of positions, is not proper for conditional certification. In *Wellman*, there was only a single job position – Project Manager – at issue and there was no dispute that members of the putative collective were paid on an hourly basis, as the court "emphasize[d] that project managers who were solely paid on a salary basis are not included in the collective action." 2014 WL 5810529, at *4 n.23. This issue is hotly disputed in the instant case. In *Kilmon*, the court certified a proposed collective including a wide range of *hourly* job positions in part because "the alleged FLSA violations in this case do not turn on the nature of the work performed" and, as a result, "[i]f Plaintiff prevails on his claims, then Defendant violated the FLSA with regard to every *hourly* employee paid straight time for overtime regardless of each plaintiff's particular job position." *Kilmon*, at *5 (emphasis added). However, the court revised the plaintiff's proposed collective from "all current and former employees" to include only "current and former *hourly* employees," in effect excluding exempt employees. *Id.* at *6 (emphasis added). Clearly, Plaintiff does not propose as much here, where his proposed collective is composed entirely of employees whom Allied has classified as exempt.

   3. <u>Allied paid Plaintiff and its other exempt employees on a salary basis and members of the putative collective are not similarly situated to enable a collective determination on the issue of their exempt status.</u>

Apparently conceding that the collective is not similarly situated in job duties or positions, Plaintiff argues that Allied's exemption defenses are precluded because it "did not pay the Putative Class Members on a 'salary basis'" but "only paid these workers straight time pay for the hours the actually worked." However, as noted previously, Allied has demonstrated that this is simply not so. Further, the documentary evidence Plaintiff proffers does not establish that

Allied had a uniform policy or practice not to pay *any* of the opt-in plaintiffs their guaranteed salary. Of the nine declarants other than Plaintiff, Allied only employed four of them: Berkeley, Hamilton, Mitchell, and Nohren. Of these, only Berkeley provides an example of a workweek in which he was paid less than his guaranteed salary. (*See* Dkt. 45-3, at 2.) Berkeley's example demonstrates nothing more than a permissible full-day deduction "when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability." 29 C.F.R. § 541.602(b)(1). Like Plaintiff, the remaining declarants employed by Allied merely claim, without any support, that "Allied never guaranteed [them] a salary."[9] This is clearly an insufficient basis for the court to conclude that Allied cannot meet the salary basis test with respect to the entire membership of the putative collective. *See Zelenika v. Commonwealth Edison Co.*, 2012 WL 3005375, at *11 (N.D. Ill. July 23, 2012) ("Plaintiffs' mere impression that their pay could be docked for [partial-day absences], supported only by affidavits lacking necessary foundation, is not sufficient to overcome Defendant's motion for summary judgment."); *see also Acs v. Detriot Edison Co.*, 444 F.3d 763, 770-71 (6th Cir. 2006).

At base, it appears Plaintiff is conflating two elements of the FLSA's salary test analysis: the salary basis test and permitted deductions. *See Coniff v. Vermont*, 2013 WL 5429428, at *12 (D. Vt. Sept. 30, 2013). One must ask, then, is Plaintiff premising his putative collective on a purported unlawful common policy of "straight time for overtime" or, rather, on a purported unlawful common policy of improper deductions that resulted in the violation of the FLSA's salary basis requirements and resulting misclassification of certain employees? If so, his motion for conditional certifications still fails. Plaintiff has provided the court with no basis to conclude that Allied engaged in a practice, either limited or widespread, of docking its exempt employees

---

[9] *See* Dkt. 45-2, ¶7; Dkt. 45-5, ¶8; Dkt. 45-8, ¶7; Dkt. 45-9, ¶7.

pay for partial day absences; in fact, Allied has provided substantial evidence to the contrary.

Setting aside whether the Plaintiff and members of the putative collective were in fact paid on a salary basis, the question itself cannot be resolved based on common inquiries and proof but requires individual determinations, as in *Strait v. Belcan Engineering Grp., Inc.*, 911 F. Supp. 2d 709 (N.D. Ill. 2012). In *Strait*, the plaintiffs sought certification of all employees the defendant classified as "Exempt Direct–Full Time" and who were paid only straight time for hours recorded over 40 each week. *Id.* at 720. The court remarked that "the defining issue of th[e] litigation is whether [the defendant] pays the [members of the putative collective] on a salary basis." *Id*. The court denied certification because it could not "find that all collective members are not exempt simply by finding that Belcan has improperly reduced the salary of some [of the putative collective]." *Id.* at 723. Instead, any determination would require "numerous inquiries into deductions taken by each different manager for employees of each different job classification…, in different locations across the nation, under various managers." *Id.* Although applying the second-stage standard, the court's reasoning is no less applicable.

When viewing the evidence provided by Plaintiff and Allied, it is clear that Plaintiff has not established any uniform practice or policy applicable to the collective, and thus Plaintiff's Motion must be denied.

## IV. CONCLUSION

For the reasons stated above, Plaintiff fails to meet even the lenient standard for conditional certification and, therefore, Allied respectfully requests that the Court deny his Motion. If, however, the Court grants Plaintiff's Motion, Allied respectfully requests the Court allow the parties to meet and confer and, if necessary, submit additional briefing on the scope of the class, the notice, and the method of and schedule for disseminating any such notice.

Respectfully submitted,

ALLIED POWER SERVICES, LLC


By: */s/Jody A. Boquist*
          One of Its Attorneys

-16-

**CERTIFICATE OF SERVICE**

  The undersigned attorney certifies that on July 20, 2018 she caused true and correct copies of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all Filing Users.

                <u>/s/ *Jody A. Boquist*</u>
                One of the Attorneys for Defendant