```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

JEFFREY BLACKBURN, JR.,           )  Docket No. 18 C 00347
                                  )
       Plaintiff,                 )  Chicago, Illinois
                                  )  August 15, 2019
       v.                         )  9:33 a.m.
                                  )
ALLIED POWER SERVICES, LLC,       )
                                  )
       Defendant.                 )
```

TRANSCRIPT OF PROCEEDINGS - Motion Hearing
BEFORE THE HONORABLE JORGE L. ALONSO

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WERMAN SALAS, P.C., by<br>MR. DOUGLAS M. WERMAN<br>77 West Washington Street<br>Suite 1402<br>Chicago, IL 60602 |
| | and |
| | BRUCKNER BURCH, PLLC, by<br>MR. RICHARD J. BURCH<br>8 Greenway Plaza<br>Suite 1500<br>Houston, TX 77046 |
| or the Defendant: | LITTLER MENDELSON, P.C., by<br>MR. DARREN M. MUNGERSON<br>321 North Clark Street<br>Suite 1000<br>Chicago, IL 60654 |
| Court Reporter: | LISA H. BREITER, CSR, RMR, CRR<br>Official Court Reporter<br>219 S. Dearborn Street, Room 1902<br>Chicago, IL 60604<br>(312) 818-6683<br>lisa_breiter@ilnd.uscourts.gov |

```
 1              (In open court.)
 2                     THE COURT:   Thank you.  Good morning, everyone.
 3                     ALL COUNSEL:   Good morning.
 4                     THE CLERK:   All rise.
 5         (Call to order.)
 6                     THE CLERK:   18 CV 00347, Blackburn vs. Allied Power
 7     Sources.
 8                     MR. WERMAN:   Good morning, Judge.  Doug Werman,
 9     W-E-R-M-A-N, for the plaintiffs.
10                     MR. BURCH:   Good Morning, Your Honor.  Rex Burch,
11     B-U-R-C-H, also for the plaintiffs.
12                     MR. MUNGERSON:   Good Morning, Your Honor.  Darren
13     Mungerson, M-U-N-G-E-R-S-O-N, on behalf of defendants.
14                     THE COURT:   All right, welcome.  Gentlemen, on the
15     last court date, the motion was pending.  It was entered and
16     continued.  I did not grant it on the last court date.  I noted
17     some of my concerns, and I supplemented that with the order
18     that I entered shortly after our status date providing further
19     explanation, and, as suggested, providing the parties with an
20     opportunity to supplement their motion.
21              The parties did supplement the agreed motion.  Of
22     course, I've had a chance to review that supplemental.  And I
23     will note, as I did in the order, guidance from the Seventh
24     Circuit regarding my role here.  "In considering whether to
25     approve class action settlements, district judges must be
```

1  vigilant in looking out for the interests members of the class
2  members.
3        In *Kaufman v. American Express Travel Related*
4  *Services*, the Court notes -- the Seventh Circuit notes, "We
5  require district judges to exercise the highest degree of
6  vigilance in scrutinizing proposed settlements of class actions
7  because class actions are rife with potential conflicts of
8  interest between class counsel and class members, district
9  judges presiding over such actions are expected to give careful
10 scrutiny to the terms of proposed settlements in order to make
11 sure that class counsel are behaving are honest fiduciaries for
12 the class as a whole." *Mirfasihi*, M-I-R-F-A-S-I-H-I, *v. Fleet*
13 *Mortgage Corporation*, Seventh Circuit case from 2004.
14       With that in mind, again, I've reviewed the motion
15 which was entered as well as the supplement.  I've considered
16 it.  Counsels have made me aware of cases in which judges,
17 including judges here in the Northern District, have approved
18 of the type of settlement that is proposed in this case.
19       However, as I noted, the major problem here, the
20 fundamental problem here is that the settlement agreement is
21 not consistent with the plain language of the FLSA, which
22 states that, "No employee shall be a party plaintiff to any
23 such action unless he gives his consent in writing to become
24 such a party and such consent is filed with the Court in which
25 such action is brought."  29 U.S.C. Section 216(b).

1       So based upon that plain language and the fact that
2  other courts, many courts have refused to grant preliminary
3  approval of settlements under which the individuals opt in to
4  the collective action by cashing a settlement check, it's my
5  finding that the proposed settlement is incompatible with
6  216(b).
7       Again, I'm aware of cases here where such settlements
8  were approved in those cases without any discussion or in-depth
9  discussion of the 216(b) problem, if you will.  They're also
10 somewhat dated, and it appears to me that the newer cases are
11 going the other direction.  They are trending towards denying
12 approval of this sort of settlement.
13      I'll also note that I don't believe that this
14 settlement is consistent with the spirit of *Ervin*, E-R-V-I-N.
15 In *Ervin*, which approved settling a FLSA collection action and
16 a Rule 23 class action in the same case, the grounds for that
17 approval seemed to me that the individuals could be given
18 choice, two choices, two binary choices.
19      The Seventh Circuit explained it does not seem like
20 too much to require potential participants to make two binary
21 choices, one, decide whether to opt in and participate in the
22 federal action; two, decide whether to opt out and not
23 participate in the state claim -- state law claims.
24      Other Courts in this circuit appear to have had little
25 trouble working out an adequate notice in this type of case.

1   That is *Ervin* v. *OS Restaurant Services, Incorporated*, a 2011
2   case.
3          Here, in this case, the individuals only get one
4   choice. They're either all in or all out. They do not have,
5   it appears to me, a true option of being in the class without
6   being in the collective.
7          If they cash the check for the class action, they are
8   automatically in the collective action. The only way to be in
9   the class action, but not the collective action, is to not cash
10  the check, which means losing all of the money from the class,
11  but still being barred from suing.
12         So again, this doesn't seem to me to be consistent
13  with *Ervin*, which suggested that plaintiffs would get different
14  remedies depending on which choices they made. Here, under the
15  proposed settlement, it is all or nothing.
16         So at this point, I'm going to present the parties
17  with a choice. I can deny approval and certify the issue for
18  interlocutory appeal so that we can get further guidance, or I
19  can give the attorneys -- the parties an opportunity to revise
20  their settlement so that, again, these individuals have a true
21  choices on each issue and so that consents get filed based on
22  the plain language of 216(b).
23         Do the parties need time to discuss that today? Do
24  you want me to pass the case today?
25         MR. BURCH:   Your Honor, speaking from the plaintiffs,

1   I have a question --
2               THE COURT:    Yes, sir.
3               MR. BURCH:     -- that perhaps the Court can answer for
4   us.
5               One thing we have thought about and are prepared to
6   offer is an alternative, which would comply with the second
7   part of 216(b) statement that consents must be filed with the
8   Court, is that we would allow at the end of the -- at the end
9   of the check-cashing period for there to be a list or, in fact,
10  the actual signed, executed checks to be filed with the court.
11              We'd prefer to do that under seal since we get a lot
12  of calls from class members saying, hey, who all's going to
13  know that I'm participating in this case and do I have to do
14  that?  And we try to protect as many people as we can from
15  having to be identified as being affiliated with the lawsuit
16  because some people resist that.
17              That would not change the issue of do you get to pick
18  and choose.  Do you get to say, oh, well, I want to participate
19  in the state law claim for unpaid overtime, but not the federal
20  claim for the identical unpaid overtime.  That's not the way
21  this settlement is set up.
22              So it would address the 216(b) issue that Your Honor
23  has raised, and I believe that we've got clearance with
24  defendants that they would agree to that if that will resolve
25  Your Honor's concerns.

1           THE COURT:   So that does not deal with both problems,
2    both issues I've identified.  I have not had occasion to
3    consider that approach.
4           MR. BURCH:   Your Honor, I would like to add something
5    with respect to the choice of participating for the state law
6    claims and not the federal claims.  The issue in this case is
7    the same.  If you recover your unpaid wages under state law,
8    you can't then go recover them under federal law, right.
9           There's a one-recovery rule that's going to bar these
10   people anyway.  And so it would, in my opinion, it makes sense
11   for defendant to say, look, we're going to pay these unpaid
12   pages.  We're only going to pay it if -- if we're done with
13   this because it's the same issue.
14          And that's not true in every case obviously.  There
15   are additional claims that are different from the federal
16   claims under state law.  But here, they're seeking the same
17   thing, the fundamental damage issue is the same under state law
18   and federal law.  There's no difference in how that back wage
19   is calculated in this particular case.  There's nothing.
20          And so to me, it would be -- it would be highly
21   unusual for -- in this particular kind of case for a defendant
22   to say, look, I'm going to settle the state claim for this
23   overtime, but not the federal claim for this same overtime.
24   There isn't a way to pull those two things apart in my opinion
25   in this particular case, but that's my thought.

1     MR. WERMAN: I'm sorry to tag-team, Judge, but one
2  additional issue. In the *Ervin* case -- that was my case. And
3  in *Ervin*, the state law claims and the federal claims were not
4  coextensive because these were claims that arose under the tip
5  credit provisions of state and federal law.
6     There was a claim that arose under the federal law,
7  which is whether or not noted -- and notice had been given to
8  people under Section 3(m) for the FLSA was adequate. That is
9  not something that exists under the state law. So the claims
10 were not completely coextensive.
11    It also went up to the Court of Appeals in a different
12 procedural context than what we're dealing with here.
13    THE COURT: Okay. So the parties or plaintiff is
14 representing that here, the claims are completely coextensive.
15    MR. BURCH: The claims for unpaid overtime are
16 identical. Whether it's -- whether it's federal law or state
17 law, it's the unpaid overtime is exactly the same.
18    There's not even a different way of calculating it.
19 Sometimes some states have different ways for calculating
20 unpaid overtime than federal law. That's not even the case
21 here. Here, the calculations are even the same.
22    THE COURT: Okay. So what's the alternative? What if
23 you go back to the drawing board and attempt to -- to address
24 both of those issues, the issue of filing the consent with the
25 Court as well as the issue of providing that choice. Even if

1    that choice -- even if the members can't proceed under both,
2    it's still providing them with that choice.
3               MR. BURCH:    Well, I would think, Your Honor, the way
4    the *Ervin* Court described it where they said, look, it's not
5    too much to ask you to make these decisions, right. It's also
6    okay to ask them to make both, right.
7               Because if somebody says, look, I don't think this is
8    fair for my unpaid overtime claim, they can opt out obviously,
9    and they can then proceed.  If they think it's enough, then
10   they can sign their check, cash your check and get paid for it.
11              But again, because we're talking about the identical
12   unpaid overtime, there isn't a way in my opinion to separate
13   those two in this kind of case because it's the same thing.
14              If you're owed a dollar in unpaid wages under the
15   Illinois Minimum Wage Act, you're owed a dollar under the Fair
16   Labor Standards Act.  And that for that same dollar, if you're
17   being offered 58 cents, which is about what it is here net,
18   right, if you're being offered 58 cents, you either say that's
19   close enough or it's not.  And if it's not, opt out and you're
20   completely free.
21              THE COURT:    Well, I will consider what the parties
22   file and I'll take a look at it, if you want to approach it
23   that way.  But I've got to wait till it's filed and consider it
24   and take a look at the authority and the arguments, consider
25   the arguments that you're making here, which I'm sure you will

1 also make in the renewed motion.
2     So the parties are interested in proceeding that way
3 as opposed to a denial and an appeal?
4     MR. BURCH:  I don't want to speak for the defendant,
5 Your Honor.  I mean, this is obviously -- the folks at Littler
6 Mendelson, which Mr. Mungerson is from, have had really good
7 luck with this issue.
8     Obviously you've seen the *Rangel* case.  You've seen
9 the *Wells Fargo* case from my circuit.  So they may have a
10 preference to appeal it since they've won it now twice in the
11 court of appeals.
12     You know, it's my preference obviously to get people
13 paid as swiftly as possible.  And so if this looks like
14 something that Your Honor would consider, it's my knee-jerk
15 reaction to try that, but I don't want to speak for them.
16     THE COURT:  Gentlemen, I've got a very light call this
17 morning.  Can we pass the case and we'll call you back in 10
18 minutes so you guys can confer.  I'll ask you to confer and
19 we'll start up in 10 minutes.
20     (Recess at 9:48 a.m., until 10:03 a.m.)
21     THE CLERK:  Recalling 18 CV 347, Blackburn vs. Allied
22 Power.
23     THE COURT:  All right, gentlemen.
24     MR. BURCH:  Your Honor, I think we've talked about
25 things outside, and we wanted to come back to the issues.

1        Your Honor, in the initial hearing and with the
2    supplemental order, I think Your Honor raised some important
3    points.  And we had tried to account for those in our original
4    settlement agreement, but frankly, we didn't do a great job of
5    explaining to folks.
6        And I think that Your Honor's suggestions that, hey,
7    you need to tell people if you sign this check, you're going to
8    be releasing your FLSA claim very explicitly.  And so we've
9    done that in the revised settlement notice, and we've made sure
10   that people are aware, you know, very plainly, simple language,
11   to make sure that people understand that the process will be if
12   you cash this check, you are releasing not only your -- your
13   state law claims, but also your federal claims.
14       And so while we -- that's consistent with the language
15   of the settlement agreement and that's what we always intended,
16   it is now hyperclear.  And so we think that that -- given that
17   that is now so clear, that that should handle the question of
18   are we giving people a fair choice to accept the settlement or
19   not accept settlement.
20       With respect to the mechanical issue that Your Honor
21   has raised, I don't -- I don't know of a way to solve that
22   other than to file, at the conclusion of the check-cashing
23   period, a list that says these are the people that
24   participated.
25       Your Honor's familiar with the case law.  I mean,

1 there's no magic language that is required for a consent. Just
2 somebody has to know, hey, what am I doing here, and do I
3 affirmatively decide to participate. With the revised notice
4 that Your Honor has in front of you and that with the
5 suggestions that Your Honor has suggested that we made, we feel
6 like we have given people that choice. Have made we feel like
7 we have made appeal that choice.
8     And so I -- I think that given the revisions to the
9 notice and the parties' willingness to file something saying
10 these are the people that have affirmatively consented to the
11 settlement, which would obviously satisfy the requirements of
12 216(b) that the settlement could be approved with -- you know,
13 given the changes to the notice and the stipulation here today
14 that we will file the list of folks who have affirmatively
15 participated.
16     THE COURT: Okay. So you're making your motion --
17 you've made the motion. We can have you file another
18 supplement addressing this issue of the stipulation so that I
19 can see something more concrete so that it can be on the record
20 and so that I can contemplate it. Do you want to try to do
21 that?
22     MR. BURCH: I'm happy to do that, Your Honor.
23     THE COURT: Let's set a couple of weeks as a deadline
24 for a supplemental filing, a supplement to the supplement.
25     Today is the 15th. Let's set a deadline of the

1  29th of August, and then I will give it a court date of a
2  couple of weeks after that, perhaps the week of the 9th.
3      THE CLERK:  September 10th, Tuesday.
4      MR. WERMAN:  Judge, I'm out of town on the 9th and the
5  10th and the 12th.
6      THE COURT:  Okay, let's give it a different week.
7  You're saying the beginning of that week works or doesn't work?
8      MR. WERMAN:  I could do 13th or the 11th.
9      THE CLERK:  September 11th at 930.
10     THE COURT:  All right.  The motion's entered and
11 continued.  I'll consider the supplemental filing, and let's
12 come back here at 9-11 at 9:30, okay?  Thanks for your
13 patience, gentlemen.  Court's in recess until 10:30.
14     (Concluded at 10:08 a.m.)
15     * * * * * * * * * *
16     C E R T I F I C A T E
17     I certify that the foregoing is a correct transcript of the
18 record of proceedings in the above-entitled matter.
19
20 */s/ LISA H. BREITER*          *August 19, 2019*
   LISA H. BREITER, CSR, RMR, CRR
21 Federal Official Court Reporter
22
23
24
25