**IN UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFREY BLACKBURN, JR., SAM ALLEN, TONY MANLEY, ROBERT MCCONNAUGHAY, and TIMOTHY GRAY, Individually and for Others Similarly Situated, <br><br> v. <br><br> ALLIED POWER SERVICES, LLC and ALLIED POWER RESOURCES, LLC | Case No. 1:18-cv-00347 <br><br> Hon. Judge Jorge L. Alonso <br><br> Magistrate Judge Jeffrey Cole |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**

**I.     Introduction.**

Plaintiffs' request for an Award of Attorneys' Fees in the amount of $2,800,000—or 35% of the common fund—and Litigation Expenses in an amount of $15,000, should be approved because they are fair and reasonable. Class Counsel are seeking their attorneys' fees as a percentage of a common fund created for the Class Members. Because the central consideration in determining the reasonableness of the attorneys' fee award in class action litigation is what class counsel achieved for the members of the class, rather than how much effort class counsel invested in the litigation, because Class Counsel's requested attorneys' fee award is consistent with the standard contingent fee awards in the Northern District of Illinois, and because Class Counsel achieved an exceptional result for Class Members, this Motion should be granted.

**II.     Class Counsel are Entitled to Payment of Their Reasonable Attorneys' Fees.**

    **A.     The Court Should Award Attorneys' Fees from a Percentage of the Fund.**

The Court should award attorneys' fees as a percentage of the total fund made available to the Class Members. When counsel's efforts result in the creation of a common fund, counsel is "entitled

1

to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994), the favored approach in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell v. Advantage Sales & Marketing LLC*, No. 1:09-cv-1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (FLSA settlement); *see also Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *3-4 (N.D. Ill. Sept. 16, 2016).

"Our court of appeals favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*." *In re FedEx Ground Package System, Inc. Employment Practices Litig.*, 251 F.Supp.3d 1225, 1236 (N.D. Ind. 2017) citing *In re Synthoid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003); *see also McDaniel v. Qwest Commc'ns Corp.*, No. 05 C 1008, 2011 WL 13257336, at *3 (N.D. Ill. Aug. 29, 2011) ("Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis.").[1] It is especially appropriate to use a common fund approach in cases based on

---

[1] The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

2

fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the Settlement releases the Class Members' statutory claims to fees under the FLSA and state wage and hour laws. *See, e.g.,* 29 U.S.C. § 216(b).

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d at 979-80. Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F.Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this District routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F.Supp.2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F.Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic

3

decision-making). As the Second Circuit has explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).

### B. Analysis of the Market for Legal Services Supports Plaintiffs' Request.

In deciding the fee to award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton,* 504 F.3d at 692-94, *citing In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.') (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 333 (3d Cir. 1998).

Here, Class Counsel executed a fee arrangement with the Representative Plaintiffs entitling Counsel to 40% of any recovery, and voluntarily reduced the attorneys' fees agreed to by the Named Plaintiffs to 35% in this matter. "Thus, the Court knows what private plaintiffs would have negotiated

4

with their lawyers, had bargaining occurred at the outset of the case because the Named Plaintiffs contracted for Counsel to be compensated with the amount Counsel now seeks." *Brewer v. Molina Healthcare, Inc.,* No. 1:16-CV-09523, 2018 WL 2966956, at *3 (N.D. Ill. June 12, 2018) (internal citations omitted); *Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016). Because the Representative Plaintiffs and Class Counsel negotiated a fee arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016).

And while the fee arrangement provides for forty percent in attorneys' fees, Class Counsel is only seeking 35% of the common fund. Attach. This percentage is consistent with the standard contingent fee awards in the Northern District of Illinois. *See Dobbs v. DePuy Orthopaedics, Inc.,* 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent") citing *Gaskill v. Gordan,* 160 F.3d at 361, 362 (7th Cir. 1998); *In re Dairy Farmers*, 80 F.Supp.3d 838, 845 (N.D. Ill. Feb. 20, 2015)(in class actions, "usual range for contingent fees is between 33 and 50 percent"); *Sanchez v. Roka Akor Chicago LLC,* No. 14-CV-4645, 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017) (finding a request for effectively 39.5% of the common fund is also consistent with the market in the Northern District of Illinois); *Prena v. BMO Fin. Corp.,* No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (contingency of 33-40% is typically charged in FLSA cases); *McDaniel,* 2011 WL 13257336, at *4 ("[T]he real-word market range for contingent fee cases is 33% to 40%."); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered).

      **C.**    **The Risk of Non-Payment Supports the Requested Attorneys' Fee Award.**

Class Counsel's decision to seek the market rate is also reasonable considering the significant risks of nonpayment Counsel faced. At the outset of the litigation, Class Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs. *Taubenfeld,* 415 F.3d at 600 (approving

5

of district court's reliance on this factor in evaluating attorneys' fees). Class Counsel took this case on a contingent fee basis and assumed the risk they would receive *no* fee for their services. *See Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, Class Counsel faced significant risk in establishing class and collective treatment was appropriate and in proving class liability and damages. As the Seventh Circuit has noted, counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.). These facts support Class Counsel's fee request.

### D. The Results and the Benefits Conferred Justify the Requested Fee Award.

The benefit the Settlement provides Class Members is excellent and the Settlement provides much more than "a fraction of the potential recovery." Even *after* the payment of attorney's fees and litigation expenses, settlement administration costs, and all service payments, the Class Members will receive their pro rata share of $5,130,000, with an average Settlement Payment of $4,358.54. *See* Doc. 146-2 at *90-109. Excluding attorney fees and costs, Class Counsel estimated the total back wages owed amounted to approximately $8.8 million and thus the maximum value of the litigation, including liquidated damages, amounted to approximately $17.2 million. *Id.* This assumes certification of every class, participation by every plaintiff, and a finding of full liability by Allied to every class member. Thus, the Maximum Gross Settlement Amount represents approximately 93% of the alleged back wages and nearly 47% of the maximum value of the case. *Id.* This result is more than fair, reasonable and adequate. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[2]

---

[2] *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148

This is an exceptional result by any measure inasmuch as Allied vigorously disputes that any of its policies and practices violated the FLSA. *See, Rotuna v. W. Customer Mgmt. Grp., LLC,* 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (awarding one-third of common fund and describing recovery of 25% of claimed wages as "exceptional."); *Dillworth v. Case Farms Processing, Inc.,* 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (awarding one-third of common fund as fee in wage case and describing recovery of one-third of claimed wages as "exceptional").

Further, outside of the Representative Plaintiffs, the Class Members will not be required to provide a general release to participate in the settlement. Instead, Class Members who did not exclude themselves from the portion of the settlement concerning their State Law Claims and those who consented to join the FLSA portion of the Settlement by timely returning and executed consent form or negotiating and cashing an FLSA Settlement Check will only provide Allied with a limited release of only their federal and state wage and hour law claims respectively. And any claims a Class Member may have against Allied other than those asserted or related to this lawsuit remain unaffected. From Class Counsel's standpoint, the absence of a general release exemplifies the results achieved for the Class Members. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp.2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

Thus, based upon the negotiated fee agreement in this case, the normal rate of compensation in

---

F.R.D. 297, 325 (N.D. Ga. 1993) (2.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

similar cases, the risk Class Counsel undertook in engaging in this litigation, and the favorable and fair result achieved for Settlement Class Members, Class Counsel is entitled to a reasonable attorneys' fees award of 35% of the Gross Settlement Fund.

      **C.    Class Counsel's Fee Request is Reasonable and Should Be Approved Without a Lodestar Cross-Check.**

Class Counsel's fee request should be approved because it is reasonably based on the market rate. No further showing or analysis is needed. *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 598 n.27 (N.D. Ill. 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"); *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.,* 251 F.Supp.3d at 1243 ("A lodestar cross-check … isn't encouraged in this circuit."); *Wright v. Nationstar Mortgage LLC,* No. 14 C 10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (courts can skip a lodestar check). This is because the recovery for Class Members is substantial and the Settlement does not present indicia that it was the product of collusion between the Parties at the expense of Class Members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am.*, 80 F.Supp.3d 838, 850 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . .").

Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar cross-check is of limited utility because "[u]ltimately . . . the market controls," *In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009); *Wright,* 2016 WL 4505169, at *17 ("Nor the is the lodestar an accurate representation of the hypothetical market agreement between the plaintiffs and their attorneys"). As explained above, because Class Counsel's substantial work to date has "bought" a

8

significant recovery for Class Members, the Court need not analyze Class Counsel's lodestar.[3]

### III. Class Counsel's Requested Expenses Are Reasonable.

The Settlement provides that Class Counsel may apply to the Court for payment of costs and expenses up to, but not exceeding, $15,000, for costs incurred in pursuit of this litigation, including travel, filing, postage, and research costs. *See* Doc. 153, detailing Class Counsel's discounted costs. Class Counsel's request of that amount from the Gross Settlement Amount as payment of costs and expenses is appropriate, as these costs and expenses were necessarily incurred in order to litigate and settle this case. *Id.* Class Counsel will incur more expenses litigating this matter than the $15,000 they seek. *Id.* at ¶¶ 11-12.

This amount is proportional to similar awards for this District. *See Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at *4 (N.D. Ill. June 12, 2018) (in FLSA settlement of $3,375,520.89, request for reimbursement of up to $10,000 in actual out-of-pocket expenses incurred in prosecuting this case, including costs for filing and service fees, and postage was found reasonable); *Briggs*, 2016 WL 7018566 at *5 (approving $35,819.29 in costs on a six million-dollar FLSA settlement, for actual out-of-pocket expenses including travel, electronic research, court fees, court reporters, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees).

Class Counsel also seeks to recover up to $15,000.00 in costs incurred in pursuit of this litigation, including travel, filing, postage, and research costs. This amount is proportional to similar awards for this District. *See Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at

---

[3] If requested by the Court, Class counsel will submit their lodestar for review. But further illustrating that the lodestar is an ineffective benchmark for reasonableness, recent opinions from the Northern District of Illinois have rejected the lodestar cross-check *even while finding the fees in question to be reasonable. See, e.g., Kaplan*, 2014 WL 2808801, at *3-4 (rejecting plaintiffs' cross-check lodestar arguments as "absurd" but finding contingency rate reasonable because it was "well within the range of market prices"); *In re Dairy Farmers of Am., Inc.*, 80 F.Supp.3d at 849 ("Ultimately, the Court sees no utility in considering this somewhat-arbitrary (and under-vetted) [lodestar] calculation, and thus disregards this evidence for purposes of this fee petition.").

*4 (N.D. Ill. June 12, 2018) (in FLSA settlement of $3,375,520.89, request for reimbursement of up to $10,000 in actual out-of-pocket expenses incurred in prosecuting this case, including costs for filing and service fees, and postage was found reasonable); *Briggs*, 2016 WL 7018566 at *5 (approving $35,819.29 in costs on a six million-dollar FLSA settlement, for actual out-of-pocket expenses including travel, electronic research, court fees, court reporters, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees).

**IV.   Conclusion.**

Class Counsel's request for an attorneys' fees award equal to thirty-five (35%) of the Gross Settlement Amount is reasonable based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, and the excellent result achieved for Class members. Therefore, the Court should award Class Counsel attorneys' fees in the amount of $2,800,000 and litigation costs in the amount of $15,000.

Dated:  June 2, 2020

Respectfully submitted,

/s/Lindsay R. Itkin
One of Plaintiff's Attorneys

Douglas M. Werman
**WERMAN SALAS P.C.**
77 W. Washington, Suite 1402
Chicago, IL 60602

Michael A. Josephson
Lindsay R. Itkin
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, TX 77046

Richard J. Burch
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, TX 77046

*Attorneys for Plaintiffs and
Class and Collective Action Members*

10

**CERTIFICATE OF SERVICE**

    I served this document by ECF electronic filing on all known parties in accordance with the Federal Rules of Civil Procedure.

                                                      */s/ Lindsay R. Itkin*
                                                      Lindsay R. Itkin